UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-23204-Civ-KING
MAGISTRATE JUDGE P.A. WHITE

NAJIB MALIK,

    Plaintiff,

vs.

WEXFORD HEALTH, etc., et al.,

    Defendants.
_____/

SUPPLEMENTAL SCREENING
REPORT OF MAGISTRATE JUDGE
RE AMENDED COMPLAINT
(DE#15)

I. Introduction

    This Cause is before the Court upon the plaintiff, Najib Malik's, pro se civil rights proceeding instituted pursuant to 42 U.S.C. §1983. Plaintiff has been previously granted leave to proceed in forma pauperis ("IFP"), with a debt being established for the Clerk's $350.00 filing fee. (DE#7). Thus, Plaintiff is proceeding IFP and is subject to §1915(e)(2) screening.

    The case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. §636(b)(1)(B), (C); Fed.R.Civ.P. 72(b), S.D.Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2003-19.

    The complaint was screened, and a Report entered recommending that the claim of deliberate indifference to a serious medical need proceed against Defendants Gaxiola, Ortega, Louissant, and Rowe in their individual capacities, and all remaining claims and Defendant(s) be dismissed. (DE#8). By written Order entered on October 29, 2014, the district court adopted the Report, but

allowed Plaintiff to cure the deficiencies, if possible, by filing a final amended complaint. (DE#9). Plaintiff has filed a final amended complaint (DE#15), which is presently before the court for screening.

Because plaintiff is a prisoner seeking redress from governmental entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. §1915, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. See Title 28, Sections 1915(e) and 1915A; Thompson v. Hicks, 213 Fed.Appx. 939, 942 (11th Cir. 2007)(*per curiam*). It is only where a Plaintiff is not proceeding IFP, that his pleadings are not subject to the screening provision of 28 U.S.C. §1915(e)(2). See Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, §1915(e) only applies to cases in which the plaintiff is proceeding IFP"); see also, Thompson v. Hicks, 213 Fed.Appx. 939, 942 (11th Cir. 2007)(citations omitted). Regardless whether the plaintiff is proceeding IFP or not, because Plaintiff is a prisoner seeking redress against governmental entities, employees, or officers, his pleadings are subject to screening under 28 U.S.C §1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. See 28 U.S.C. §1915A; Thompson v. Hicks, 213 Fed.Appx. 939, 942 (11th Cir. 2007)(*per curiam*).

It is noted that pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(*per curiam*), but the Court may review plaintiff's complaint and dismiss the complaint, or any part thereof, if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. See 28 U.S.C. §1915A.

This Cause is presently before the Court for initial screening of the Amended Complaint (DE#15), pursuant to 28 U.S.C. §1915(e), because the plaintiff is proceeding *in forma pauperis*.

## II.   Standard of Review

Because the Plaintiff is a prisoner proceeding *in forma pauperis* and seeks redress from a government entity, this case is subject to the judicial screening provisions of United States Code Title 28, Sections 1915 and 1915A. Section 1915(e)(2) instructs that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, **the court shall dismiss the case at any time** if the court determines that –
>
> \*   \*   \*
>
> (B) the action or appeal --
>
> (i)  is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii)  seeks monetary relief against a defendant who is immune from such relief.

Id. (emphasis added).

Section 1983 civil rights actions require the deprivation of a federally protected right by a person acting under color of state law. 42 U.S.C. §1983; Polk County v Dodson, 454 U.S. 312 (1981); Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001); Whitehorn v Harrelson, 758 F. 2d 1416, 1419 (11th Cir. 1985). In order to state a claim, a plaintiff must establish (1) he was deprived of a right secured by the Constitution or laws of the

United States, and (2) the alleged deprivation was committed under color of state law. 42 U.S.C. 1983; <u>Dodson</u>, 454 U.S. at 312; <u>see</u> <u>Almand v. DeKalb County, Ga.</u>, 103 F.3d 1510, 1513 (11th Cir. 1997).

The standard for determining whether a complaint states a claim upon which relief may be granted is the same under Section 1915(e)(2)(B), or Federal Rules of Civil Procedure 12(b)(6) and 12(c). <u>See</u> <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). A complaint need not contain detailed factual allegations. <u>See</u> Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief....").

<u>Pro se</u> complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1979)(<u>quoting</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. <u>Davis v. Monroe County Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11 Cir. 1997).

However, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions; a "formulaic recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The allegations must rise above the speculative level and "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. A complaint is "frivolous under section 1915(e) "where it lacks an arguable basis either in law or in

4

fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); see Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," or when the claims rely on factual allegations that are "clearly baseless." Neitzke, 490 U.S. at 327.

To determine whether a complaint fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. See Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662 (2009). First, the court must identify the complaint's factual allegations, which are entitled to an assumption of truth, and identify and reject the legal conclusions to which no assumption of truth applies. Iqbal, 556 U.S. at 678. Second, the court must determine whether these factual allegations, taken as true, plausibly suggest an entitlement to relief. Id. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. If the well-pleaded facts do not permit the court to infer more than the "mere possibility of misconduct," the complaint is insufficient. Id. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.[1]

III. Facts Set Forth in the Amended Complaint (DE#15)

The plaintiff names the following five (5) defendants:

---

[1] The application of the Twombly standard was clarified in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

5

The plaintiff sues Daniel L. Conn, Chief Executive Officer of Wexford Health Services, Inc. He also names the following four defendants employed at Everglades Correctional Institution ("Everglades CI"): Dora Gaxiola, the Chief Health Officer ("CHO"); Oscar Ortega, the Medical Director; ARNP Maria Louissant; and, Rick Rowe. All the named defendants are sued in their individual and official capacities. (DE#15:2-3).

Plaintiff alleges that since 1999, he has been suffering from Hepatitis-C, high blood pressure, hypertension, neuropathy, and diabetes. (DE#15:3). He maintains these medical conditions cause bilateral edema, dizziness, excruciating pain and suffering, all of which have been ignored by the four named Everglades CI defendants. (Id.:3). He maintains that from late 2010, he has complained of the pain regarding his bilateral edema, but has been provided no treatment for his neuropathy. (Id.:4). He also maintains it has been over a year since he has had a follow-up examination of his HDL-C, which has caused his hypertension to go unmanaged, resulting in an increase to the levels of these life threatening diseases. (Id.:4). Regarding his foot pain, he claims he has been provided orthotics footwear, but has been denied an outside consultation with a specialist to address the condition. (Id.). He maintains Ortega, Gaxiola, Louissant, and Rowe have seen and denied him much needed treatment for chronic pain and for his life threatening conditions. (Id.:4-5). He claims the four named defendants employed at Everglades CI insist on a course of treatment known to be inadequate and ineffective, placing Plaintiff's life at risk. (Id.).

Plaintiff further alleges that in denying his grievance, in December 2011, the "secretary who denied it" indicated he had been scene by an endocrinologist on October 16, 2011. (Id.:5). Plaintiff

6

states, however, that he was never seen by an endocrinologist, and suggests that any such report is a fabrication or falsity. (Id.).

Next, Plaintiff alleges that the Defendant Conn, a Wexford CEO, was responsible for the operations and medical management of services provided to Florida prison facilities. (Id.:6-7). He agrees that while Defendant CEO was not responsible for the deliberate indifference claim, he was responsible for the manner in which the medical health facilities at Everglades CI were operated. (Id.). As such, he faults Conn with failing to insure that the institution provided proper medical care to inmates, addressing serious medical conditions in a timely manner. (Id.). In essence, he suggests that there is a policy in place at the Everglades CI medical facility of providing cursory or minimal medical care management, and ignoring or failing to adequately treat medical conditions, in violation of an inmate's constitutional rights. (Id.). He explains that this policy has been designed to deny inmates minimal adequate medical treatment as a cost saving measure. (Id.).

Plaintiff seeks compensatory and punitive damages, along with injunctive relief.

## IV.  Discussion

To state a claim under 42 U.S.C. §1983 against the FDOC and MCI, plaintiff must allege that some person, acting under color of state law, deprived plaintiff of "rights, privileges, or immunities secured by the Constitution and Laws of the United States." 42 U.S.C. §1983. Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996–97 (11th Cir. 1990).

A.  <u>Supervisory Liability Claim Against Defendant Conn</u>

Plaintiff sues the Defendant, Daniel L. Conn, CEO of Wexford, in his supervisory/official capacity, claiming he is responsible for insuring that the medical health facility at Everglades CI is maintained and operated so that prisoners, like plaintiff, are not exposed to unreasonable risk of harm. He also claims this defendant has a policy in place or otherwise condones or approves of policies which deny inmates access to medical care and treatment, exposing inmates, and in particular the Plaintiff, to unnecessary risk of harm resulting from the failure to adequately address serious medical conditions. According to the Plaintiff, this policy has been implemented as a cost-saving measure, in violation of his constitutional rights.

It is well settled that if a plaintiff sues a supervisor, there must be proof that the alleged injuries resulted from an official custom, policy, or practice.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Mandel v. Doe</u>, 888 F.2d 782 (11 Cir. 1989). The plaintiff bears the burden of establishing a causal link between a government policy or custom and the injury which is alleged.  <u>Byrd v. Clark</u>, 783 F.3d 1002, 1008 (11 Cir. 1986)(citing <u>Monell</u>, <u>supra</u>).  See also; <u>Ashcroft v Iqbal</u>, <u>supra</u>. (Heightened pleading standard for supervisory liability).

Further, it is also well-established that supervisors are not subject to section 1983 liability under theories of respondeat superior or vicarious liability for the actions of their subordinates. See <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999). However, the Eleventh Circuit has held that supervisors who are not alleged to have personally participated in the constitutional violation which gave rise to the section 1983 action

8

may nonetheless be liable for a constitutional deprivation "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003). Such a causal connection, may be established: (1) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, (2) when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights," or (3) "when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." See Cottone, 326 F.3d at 1360-61. (citations and internal quotation marks omitted).

The allegations in the complaint minimally state that the CEO at Wexford is responsible for and has implemented or otherwise condoned a policy of widespread cost-cutting measures at the medical facilities it overseas; and, in particular, Everglades CI. This policy has resulted in the Plaintiff receiving minimal, cursory, inadequate medical attention, which is tantamount to no care at all and has resulted in a deliberate indifference to his serious medical conditions. Plaintiff suggests that the Defendant CEO has been aware of this medical deficiency and abuse by Defendants Ortega, Louissant, Rowe, and Gaxiola; and after being put on notice of such abuse, has failed to take any remedial or corrective action. To the contrary, Plaintiff states this is lack of adequate care and treatment, resulting from an official custom or policy which the Defendant CEO has directed or otherwise implemented.

The Eleventh Circuit has rejected the idea that " 'financial considerations must be considered in determining the

reasonableness' of inmates' medical care to the extent that such a rationale could ever be used by so-called 'poor states' to deny a prisoner the minimally adequate care to which he or she is entitled." Harris, 941 F.2d 1495, 1509 (11th Cir. 1991)(quoting Harris v. Thigpen, 727 F.Supp. 1564, 1578 (M.D.Ala. 1990)). However, in appropriate circumstances, deliberate indifference claims based on allegations of institutional "cost-cutting" are cognizable. See e.g., Walker v. Powell, 2007 WL 4303766 (N.D.Fla. Dec. 10, 2007) (unrebutted allegations that Plaintiff went from 180 to 140 pounds because prison meals were nutritionally inadequate due to cost-saving measures were sufficient to create a triable issue of fact). At this juncture, the plaintiff has stated a minimal claim against Conn in his supervisory capacity.

   B.  Claim of Deliberate Indifference-Re Serious Medical Need
       Against Defendants Ortega, Louissant, Rowe, and Gaxiola

   Plaintiff sues the four named Everglades CI Defendants, claiming they were deliberately indifferent to his serious medical needs by intentionally and maliciously denying him proper medical care and treatment for his Hepatitis-C, chronic diabetes, neuropathy, and hypertension.

   The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173(1976)); see also Campbell v. Sikes, 169 F.3d 1353, 1363 (11 Cir. 1999).[2] "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth

---

[2] If the plaintiff was a pre-trial detainee at the time of the alleged violations, his rights are secured by the Fourteenth Amendment, Hamm v DeKalb County, 774 F.2d 567 (11 Cir. 1995).

10

Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11 Cir. 1999) (citation omitted).

An Eighth Amendment claim contains both an objective and a subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11 Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11 Cir. 1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363. The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)(quotation marks and citation omitted). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. Id. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment.

11

See Estelle, 429 U.S. at 106. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06; Wilson, 501 U.S. at 298.

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11 Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott, 182 F.3d at 1255. For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. Hill, 40 F.3d at 1190 n. 26; H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086 (11 Cir. 1986) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11 Cir. 1985)).

Whether a delay in treatment was tolerable "depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11 Cir. 1994); McElligott, 182 F.3d at 1255; see also Adams, 61 F.3d at 1544 ("Some delay . . . may be tolerable depending on the nature of the medical need and the reason for the delay."). For instance, delays of days or even hours in delivering necessary treatment may constitute deliberate indifference in some circumstances. See, e.g., Harris, 21 F.3d at 394; Brown v. Hughes, 894 F.2d 1533, 1538 (11 Cir. 1990). Of

course, in these prior cases, the medical condition is so grave, and requires such immediate medical attention, that "[a] few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." Harris, 21 F.3d at 394; see, e.g., Brown, 894 F.2d at 1538 (approximate six-hour delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim"). "Delayed treatment for injuries that are of a lesser degree . . . may also give rise to constitutional claims." Harris, 21 F.3d at 394.

      a.   Serious Medical Need. For the purpose of this analysis, the plaintiff has sufficiently alleged that he has a serious medical needs, to-wit, Hepatitis-C, requiring medical treatment. See Brown v. Johnston, 387 F.3d 1344, 1351 (11th Cir. 2004)(noting that hepatitis meets the established definition for a serious medical need). He also claims he has chronic diabetes and hypertension which he maintains is being untreated. At a minimum, Plaintiff has alleged serious medical needs requiring medical treatment.

      b.   Deliberate Indifference. Upon review of the factual allegations in the Amended Complaint, the undersigned concludes that the plaintiff has minimally stated an arguable claim of deliberate indifference against Defendants Gaxiola, Ortega, Louissant, and Rowe. He claims that these defendants have been deliberately indifferent to his medical conditions by failing to provide him proper medical care and treatment. In fact, he states no follow-up on his Hepatitis-C has been done for over a year, and his hypertension has been left untreated. He also claims they have ignored his repeated requests for treatment, threatening to place him in administrative confinement. At this juncture, plaintiff has

stated a minimal claim of deliberate indifference as to the four named defendants in their individual capacity.

### C. Official Capacity Claim

Plaintiff alleges that he is also suing Gaxiola, Ortega, Louissant, and Rowe, in their official capacities. A §1983 suit against the defendants in their official capacities is tantamount to a suit against the State, and thus the defendants would be immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11 Cir. 1986).

The allegations of the complaint, however, state a classic case of an official, acting outside the scope of his/her duties and in an arbitrary manner. Scheuer v. Rhodes, 416 U.S. 232, 238 (1974). Under this construction of the complaint, this Court has jurisdiction over the four named Everglades CI defendants in their individual capacities. Moreover, a determination of whether the defendants may be entitled to qualified immunity cannot be determined at this juncture.

### D. Conspiracy to Falsify Reports/Records

Plaintiff alleges the five named defendants conspired to falsify reports and responses to grievances regarding treatment provided to plaintiff. Plaintiff states he was never seen by an endocrinologist on October 16, 2012, and is not being monitored in the chronic clinic, contrary to representations made by the defendants in response to his grievances regarding the denial of proper medical care and treatment.

To state a section 1983 claim for conspiracy, a plaintiff must allege a conspiracy that resulted in the actual denial of some underlying constitutional rights. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010). The plaintiff must show that the parties "reached an understanding to deny the plaintiff his or her rights." Id. (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)). Additionally, the plaintiff must establish that the conspiratorial acts impinge upon the federal right. Bendiburg, 909 F.2d at 468. To avoid dismissal on a motion to dismiss, the plaintiff must make particularized allegations that a conspiracy exists. Hansel v. All Gone Towing Co., 132 Fed.Appx. 308, 309 (11th Cir. 2005) (citing GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998)).

Here, Plaintiff's allegations are conclusory, and he provides nothing to support an actual conspiracy nor can this court discern from his pleading any evidence that indicates the named defendants entered into an agreement to deprive plaintiff of his constitutional rights. Accordingly, the court concludes that plaintiff's bare allegation of a conspiracy is insufficient to support a claim for relief in this 42 U.S.C. §1983 action and, as such, this claim warrants dismissal pursuant to the provisions of 28 U.S.C. §1915(e)(2)(B)(ii).

E.  Claim for Punitive Damages

Plaintiff seeks punitive damages against all five named defendants. "[A] jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "While the Smith

Court determined that it was unnecessary to show actual malice to qualify for a punitive award, ... its intent standard, at a minimum, required recklessness in its subjective form." Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999). Smith refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." Smith, 461 U.S. at 45-48 (quoting Philadelphia, W. & B.R. Co. v. Quigley, 62 U.S. 202, 214 (1858).

At this early juncture it cannot be determined whether punitive damages should be awarded against the defendants. It is therefore recommended that the plaintiff's claim for punitive damages proceed against the defendants, in their individual capacity proceed.

### F.  Injunctive Relief

Finally, as to Plaintiff's request for preliminary and declaratory injunctive relief, the Eleventh Circuit has held that such relief is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001). An irreparable injury "must be neither remote nor speculative, but actual and imminent." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).

In the present case, Plaintiff has not alleged sufficient facts to support his request for injunctive relief under the above

standard. Plaintiff fails to allege that he will suffer irreparable injury. Instead, he alleges only a speculative possibility of future injury. See Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001)); see also Holland America, Ins. Co. v. Succession of Roy, 77 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). In fact, Plaintiff has since been transferred from Everglades CI. As a result, the claim for injunctive relief appears to have become moot.

Nor has Plaintiff alleged facts suggesting that he will likely succeed on the merits of his claims. Finally, Plaintiff has not shown that the alleged threats outweigh the harm to the administration of the prison system or that granting the motion will not be adverse to the public interest. See e.g., Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). There is simply no indication that the "drastic remedy" of injunctive relief is warranted at this juncture. Accordingly, Plaintiff's motion for injunctive relief should be denied.

V. Conclusion

Based on the foregoing, it is recommended as follows:

1. The claim(s) against Defendant Conn proceed in his supervisory capacity.

2. The Plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need against Defendants, Gaxiola, Ortega, Louissant, and Rowe should proceed in their individual capacity, but to the extent plaintiff seeks to sue the defendants in their official capacity, that the official capacity claims as to these defendants be dismissed.

3. That the punitive damages claim proceed as to Defendants, Gaxiola, Ortega, Louissant, Rowe, and Conn.

4. That the conspiracy claim, along with his request for declaratory and injunctive relief, be dismissed for failure to state a claim upon which relief can be granted.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

Signed this 15th day of December, 2014.

UNITED STATES MAGISTRATE JUDGE

```
cc:   Najib Malik, Pro Se
      DC#X41699
      Santa Rosa Correctional Institution
      5850 East Milton Road
      Milton, FL 32583
```