UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-23204-Civ-KING
MAGISTRATE JUDGE P.A. WHITE

NAJIB MALIK,

    Plaintiff,

vs.

WEXFORD HEALTH, et al.,

    Defendants.

_____/

**REPORT OF MAGISTRATE JUDGE RE
DEFENDANTS' MOTION TO DISMISS
(DE#125)**

## I.   Introduction and Background

This Cause is before the Court upon the Defendants' motion to dismiss and for sanctions, based on plaintiff's failure to participate in discovery. (DE#125).

Briefly, the Plaintiff filed this *pro se* civil rights complaint, as amended (DE#83) arising from a claim of deliberate indifference to a serious medical need. He sues the following Defendants: **Dr. Daniel L. Conn**, President and Chief Executive Officer of Wexford Health Services, Inc., **Dr. David J. Reddick**, the Regional Medical Director, **Dr. Seyed Hosseini**, the Chief Health Officer; together with the following Defendants, all of whom were employed at Everglades Correctional Institution ("ECI"): **Dr. Dora Gaxiola**, **Dr. Oscar Ortega**, **ARNP Maria Louissant**, and **Dr. Carl Balmir**. With the exception of Dr. Conn, who is sued in his official capacity, all of the remaining Defendants are sued in their

individual capacities. (DE#83:1-2). After the complaint was screened, a Report recommending that the case proceed on claims of deliberate indifference to a serious medical and punitive damages, was adopted by court order entered on November 17, 2016. (DE#s83,89). Once service was accomplished, Answers were filed by the Defendants, and a pretrial scheduling order was entered. (DE#s90-94,113-114,115).

Thereafter, Defendants filed a motion to depose the Plaintiff which was granted by court order entered on December 13, 2016. (DE#s102,103). On January 4, 2017, Plaintiff objected to the court's order allowing Defendants to depose him. (DE#107). The court overruled Plaintiff's objections, cautioning Plaintiff that his failure to cooperate with discovery, including the taking of his deposition, may result in the imposition of sanctions, including dismissal of this case. (DE#109).

On April 3, 2017, Plaintiff appeared for his scheduled deposition. (DE#125:Ex.A). At that time, when he was given the oath, and asked whether he affirmed that his testimony would be the "the whole truth and nothing but the truth," Plaintiff responded, "I do, **I guess**." (Id.:Ex.A:4). When asked to clarify what he meant by "I guess," Plaintiff responded, "I mean, **I don't know what to say**, you know, I do or I will tell the truth, **I guess**." (Id.).

During his deposition, Plaintiff acknowledged it was his signature on various refusal of medication forms, with the latest being January 28, 2014. (Id.:67-68). In fact, when asked if a December 7, 2013 form was a refusal of all medical services, Plaintiff responded, "**I'm not going to answer no more about this refusal, please. You need to move onto something else**."

(Id.:67)(emphasis added). Plaintiff acknowledged it was his signature on a January 28, 2014 form, but again would not respond to or otherwise answer whether the form was a refusal of an increase or change to Plaintiff's hypertension medication, stating instead, **"I'm not going to answer that**....**"** (Id.)(emphasis added). He was asked to respond to the question two more times, and Plaintiff refused to do so. (Id.). He acknowledged that defense counsel had paid for a flight to depose Plaintiff at SRCIA, but explained that he had "been sick for three days, ma'am," stating he had been "throwing up all night long." (Id.:69).

Plaintiff further explained that he was "burning up with a fever" at that moment, stating that he had been at medical at 2:00 a.m. that day because he could not breathe, but out of respect for the defense, he had appeared for his scheduled deposition. (Id.). When asked if he could continue with his deposition, Plaintiff responded, "Not really....It's hard for me to breathe right now. It's been going on for two days. I'm throwing up as soon as I wake up...." (Id.:69-70). Plaintiff further testified that his chest was getting "tighter and tighter." (Id.:70).

Although Plaintiff previously stated he had been to sick call at 2:00 a.m. that day, he then offered equivocal testimony, stating that he was "supposed to go to sick call today," but had cancelled "all of that" because of the scheduled deposition. (Id.:70). When further questioned in this regard, Plaintiff said, "I say I wanted to go to sick call." (Id.). In light of the Plaintiff's representations, defense counsel felt uncomfortable with continuing the deposition given Plaintiff's medical complaints. (Id.).

Dr. Albert C. Maier, a Senior Physician with the Florida Department of Corrections ("FDOC") Reception and Medical Center has

3

provided an affidavit explaining that his job includes oversight of medical services of inmates with the FDOC. (Id.:125-2). Attached to his Affidavit are excerpts of medical records from April 13, 2017. (Id.). In relevant part, the FDOC Chronological Record of Health Care for April 3, 2017 at 0400 hours (4:00 a.m.), just four days prior to his scheduled deposition, Nurse B. Bray at Santa Rosa Correctional Institution Annex ("SRCIA") documented that the Plaintiff had refused his medication and has been refusing to take his morning medications "off/on." (DE#125-2). At that time, Nurse Bray documented that Plaintiff was complaining of vomiting and cramping, but Plaintiff's vital signs were within normal limits ("VS-WNL"), and no noted distress. (Id.). However, Plaintiff was instructed that if his symptoms worsened, to return to sick call. (Id.).

Medical record excerpts next reveal Plaintiff was seen on April 5, 2017 for a follow-up on a diabetic ulcer on Plaintiff's left heel. (DE#125-2:8). At that time, it was confirmed that Plaintiff had been taking antibiotics for the preceding 10 days, but there was no indication of respiratory infections, and his temperature was 98 degrees. (Id.). No complaints by Plaintiff regarding shortness of breath, vomiting, or fever were reported by the SRCIA Nurse, N. Pearce. (Id.).

One day prior to his deposition, Plaintiff was again seen on April 6, 2017 for a laboratory periodic screening of his blood glucose and hemoccult test, but Plaintiff refused the hemoccult test at that time. (DE#125-2:9). There is nothing in that report to indicate that Plaintiff was complaining of suffering from a fever, shortness of breath, or vomiting. (Id.).

On the day of his deposition, April 7, 2017, at 5:00 a.m., Plaintiff completed an Inmate Sick-Call Request, declaring a "medical emergency," stating that on April 3, 2017, he was running a temperature, had shortness of breath, cold chills, no appetite, and was throwing up three to four times a day. (Id.:10). Plaintiff further stated that the symptoms had been ongoing for the preceding two weeks.[1] (Id.). Nurse Pearce evaluated the Plaintiff and found his vital signs to be within normal limits, with no signs of a temperature. (Id.).

Also on April 7, 2017, a Florida Department of Corrections, Office of Health Services, Vomiting/Diarrhea Protocol Form (DC4-683KK) was also completed by N. Pearce, a registered nurse at SRCIA, following complaints by Plaintiff that he had been throwing up and believed he needed his insulin adjusted. (DE#127-1). Therein, it was noted that the Plaintiff complained he had been vomiting for approximately two weeks, had mid-abdominal pain, fever, faintness, and dizziness. (Id.). Upon examination, Nurse Pearce noted that Plaintiff's temperature was 98.8 degrees, his skin was pink and his pulse regular. (Id.). Nurse Pearce noted thereon to schedule an appointment with the clinician because Plaintiff believed he needs "hpH adjusted." (Id.). Plaintiff was advised to eat a regular diet, but to avoid sugary and fruit drinks, and instructed on good hand hygiene, and that if the

---

[1]However, Plaintiff's March 23, 2017 Chronological Record of Health Care reveals he was seen for a follow-up by Dr. G. Ramos at SRCIA, for a foot lesion, at which time the doctor noted that Plaintiff has had the lesion for about a month, and it was affecting his left foot, on the plantar area. (DE#125-2:13). Plaintiff was prescribed antibiotics, and Dr. Ramos commented, "consider debridement after oral antibiotic." (Id.). Nothing in the doctor's notes, however, reveals any complaints by Plaintiff that he was suffering from nausea, vomiting, fever, dizziness, etc. (Id.).

symptoms return or worsen, to return to medical. (Id.).

Defendants argue that dismissal is warranted because the Plaintiff has impeded their ability to conduct discovery, contrary to this court's orders. (DE#125). Plaintiff was ordered to respond to the Defendants' motion, and did so providing his pleading for mailing to prison authorities on April 24, 2017. (DE#129). That pleading, however, is not signed by the Plaintiff under penalty of perjury.[2] (DE#129:8). In his response, Plaintiff suggests that "hypertension and anxiety" can cause the very symptoms Plaintiff was experiencing at the time of his deposition. (DE#129:2). Plaintiff suggests that, because he "refused to answer one question," defense counsel should not have repeated the same or similar question again, because Plaintiff felt he was being "bullied" which, in turn, induced "anxiety," causing Plaintiff to feel nauseous. (Id.:3). He suggests that the defense's actions were pre-planned in order to induce Plaintiff's anxiety. (Id.:4). Such argument is completely specious and devoid of any basis in fact or reality. Counsel could not have anticipated the Plaintiff's responses to the questions posed during the deposition. Plaintiff explains he answered the questions posed as he did because he did not have counsel there to represent him and he "didn't understand

_____

[2]In relevant part, every pleading filed by a *pro se* litigant must be signed by the *pro se* party personally. See Fed.R.Civ.P. 11(a). "[T]he requirements of the rules of procedure should be liberally construed," however, and " 'mere technicalities' should not stand in the way of consideration of a case on the merits." Torres v. Oakland Scavenger Co., 487 U.S. 312, 315, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988). This applies to situations where "a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule ... [but is nevertheless] the functional equivalent of what the rule requires." Id. at 316-17, 108 S.Ct. at 2408. Here, as noted previously, it is evident Plaintiff has not executed the response nor has he cured the defect.

what he was to say or do." (<u>Id</u>.:4).

From the foregoing, Defendants argue that Plaintiff has presented no interest in continuing with the prosecution of the instant case, in direct violation of this court's initial orders. Alternatively, Defendants seek an extension of the pretrial deadlines so that Plaintiff's deposition can be continued and summary judgment motions filed.

## II.  Discussion

First, it is worth mentioning that this case was filed in August 2014, and presents a long and torturous procedural history, resulting from multiple amended complaints and culminating in the Defendants' motion to dismiss. It is now almost three years old.

Second, it is evident that Plaintiff has not complied with this court's order of instructions. The court's order of instructions (DE#5) to the Plaintiff provides, in pertinent part, as follows:

> 11.  It is the plaintiff's responsibility to actively pursue this case, obtain any essential discovery, file all necessary pleadings and motions and otherwise comply with all scheduling orders and prepare the case for trial. Failure to do so will probably result in dismissal of the case for lack of prosecution....

(DE#9-Order of Instructions to Pro Se Civil Rights Litigants). The order was sent to the Plaintiff at his address of record in September 2014, Everglades Correctional Institution. The Order has never been returned to this Court as undeliverable.

Given the detailed history above, it appears the Plaintiff has attempted to derail the Defendants efforts to conduct discovery and prepare the case for dispositive resolution. In fact, the evidence provided, coupled with Plaintiff's responses to the deposition questions clearly reveals that Plaintiff has attempted to hinder and/or otherwise impede the discovery process by first objecting to even having his deposition taken, as ordered by this court. Then, during his deposition, refusing to answer questions posed of him by the defense, explaining had been and was physically ill, when medical records prove otherwise. As will be recalled, Plaintiff was ordered on more than one occasions to actively litigate this matter, and was cautioned that failure to do so may result in dismissal of this case.

Federal Rule Civil Procedure 41(b) provides, in pertinent part, that "for failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for a dismissal of an action or any claim against the defendant." Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002) (citations omitted). A decision to dismiss for want of prosecution rests within the district court's discretion. The Eleventh Circuit has commented that "[a] district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009)(quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Such authority includes the power to dismiss a case for failure to prosecute or for failure to comply with a court order. Id. (citing Fed.R.Civ.P. 41(b)). See also Muhammad v. Bethel Muhammad, ___ F.3d ___, 2014 WL 1272473, *1 (11th Cir. Mar. 31,

2014) (unpublished)(<u>citing</u> <u>Gratton v. Great Am. Commc'ns</u>, 178 F.3d 1373, 1374 (11th Cir. 1999)); <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989);  <u>Link v. Wabash R. R.</u>, 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)(interpreting Rule 41(b) not to restrict the court's inherent authority to dismiss *sua sponte* an action for lack of prosecution); <u>Hyler v. Reynolds Metal Co.</u>, 434 F.2d 1064, 1065 (5th Cir. 1970)("It is well settled that a district court has inherent power to dismiss a case for failure to prosecute....").[3]

Rules 37(b) and 41(b) allow the Court to dismiss a plaintiff's complaint if a plaintiff has failed to prosecute or failed to comply with a Court's order or the Federal Rules. <u>Gratton v. Great American Communications</u>, 178 F.3d 1373, 1374 (11th Cir. 1999). "Dismissal under [Rule 37 and 41], while an extreme sanction, is appropriate where a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and the district court specifically finds that lesser sanctions would not suffice." <u>Pippen v. Georgia Pacific Gypsum, LLC</u>, 408 Fed.App. 299, 303 (11th  Cir. 2011)(internal quotations and citation omitted).

However, the sanction of dismissal, especially with prejudice, is considered severe and should be imposed "only in the face of a clear record of delay or contumacious conduct by the plaintiff." <u>Durham v. Florida East Coast Ry. Co.</u>, 385 F.2d 366, 368 (5th Cir. 1967). Dismissal is a sanction of last resort, applicable only in extreme circumstances, and appropriate only when less drastic sanctions would be ineffective. <u>McKelvey v. AT & T Tech., Inc.</u>, 789 F.2d 1518, 1520 (11th Cir. 1986); <u>State Exch. Bank v. Hartline</u>, 693 F.2d 1350, 1352 (11th Cir. 1982); <u>Martin-Trigona v. Morris</u>, 627 F.2d

---

[3]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

680, 682 (5th Cir. 1980). Dismissal with prejudice has been upheld where a plaintiff has repeatedly failed to obey court orders and pretrial orders. See Goforth v. Owens, 766 F.2d 1533 (11th Cir. 1985); Jones v. Graham, 709 F.2d 1457 (11th Cir. 1983); Anthony v. Marion County Gen. Hosp., 617 F.2d 1164 (5th Cir. 1980); In re Liquid Carbonic Truck Drivers Chem. Poisoning Litig., 580 F.2d 819 (5th Cir. 1978).

While it is preferable to forewarn a plaintiff that dismissal under Rule 41(b) is being considered, advance notice is not necessary. Link, 370 U.S. at 632, 82 S.Ct. at 1389-90; Martin-Trigona, 627 F.2d at 681 n.1. A plaintiff does not have to completely abandon prosecution of an action to warrant dismissal; dismissal has been upheld even where a plaintiff has conducted discovery and participated in hearings. See, e.g., Hartline, supra; Lopez v. Arkansas County Indep. Sch. Dist., 570 F.2d 541 (5th Cir. 1978); Delta Theatres, Inc. v. Paramount Pictures, Inc., 398 F.2d 323 (5th Cir. 1968). Repeated delays or disregard of court orders or deadlines can support dismissal, where the plaintiff acts deliberately rather than negligently. McKelvey, 789 F.2d at 1520.

Also for consideration is whether and to what extent attorney's fees and costs should be awarded as a sanction for Plaintiff's conduct. Defendants seek not only dismissal, but the imposition of attorney's fees and costs. Under Rule 37(b) "the court must order the disobedient party ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir.

1997)(citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). District courts have "considerable discretion in managing discovery and determining that reasonable people could differ in the appropriateness of ... discovery requests." <u>Neumont v. Fla.</u>, 610 F.3d 1249, 1253 (11th Cir. 2010).

Defendants argue that they have spent time and money flying to SRCIA to depose the Plaintiff, but when attempting to do so, Plaintiff refused and/or was otherwise noncompliance, refusing to answer questions posed to him. Defendants, however, have provided no affidavit or invoice stating the actual amount of attorney's fees or costs incurred in preparing for the depositions, the travel expenses associated therewith, or such other expenses incurred in order to enable the court to determine the amount of attorney's fees and costs incurred.

Given the detailed history noted above, the Undersigned recommends that the court dismiss this action under Rule 37 due to Plaintiff's dilatory behavior in impeding the defense's ability to depose him, and then at his scheduled deposition, failing to answer questions, providing equivocal testimony regarding whether he had sought medical treatment that day. Moreover, given the excerpts of the medical records provided by the defense, it appears that Plaintiff's representations regarding his purported illness at or before his deposition were, at best, disingenuous and border on the perjurious. To the extent the Defendants seek an award of fees and costs associated therewith, the Defendants should be ordered to file an affidavit and motion setting forth the amount of attorney's fees and costs incurred for the district court's consideration.

### III.  Recommendations

Based upon the foregoing, it is recommended that: (1) the Defendants' motion to dismiss (DE#125) be GRANTED; (2) that this case be DISMISSED with prejudice for failure to comply with court orders pursuant to Rule 37 and Rule 41; (3) that Defendants be awarded reasonable attorney's fees and costs, the amounts to be determined by the district court upon the filing by Defendants of an appropriate motion with supporting affidavit and copies of invoice(s); and, (4) that the cases be CLOSED.[4]

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND ORDERED at Miami, Florida, this 17th day of May, 17, 2017.

UNITED STATES MAGISTRATE JUDGE

---

Unless the Court specifies otherwise, a dismissal for failure to prosecute operates as an adjudication on the merits. See Fed.R.Civ.P. 41(b).

cc:   Najib Malik, <u>Pro Se</u>
      DC#X41699
      Santa Rosa Correctional Institution-Annex
      Medical Main Unit
      Inmate Mail/Parcels
      5850 East Milton Road
      Milton, FL 32583

      Mary Katherine Hunter, Esquire
      Attorney for Defendants
      Chimpoulis Hunter & Lynn
      150 South Pine Island Road, Suite 510
      Plantation, FL 33324
      Email: khunter@chl-law.com